POSNER, Circuit Judge,
concurring.
I join Judge Williams’s majority opinion without reservations. I write separately only to focus attention on what seems to *870 me a persistent, serious, and often ignored deficiency in opinions by the administrative law judges of the Social Security Administration denying social security disability benefits (or, what is similar, supplemental security income). The deficiency concerns testimony by vocational experts employed by the Administration concerning the number and types of jobs that an applicant deemed not to be totally disabled could perform, and the evaluation of that testimony by administrative law judges. This deficiency has recently been attracting critical attention. See, e.g., Browning v. Colvin, 766 F.3d 702, 708-09 (7th Cir.2014); Herrmann v. Colvin, 772 F.3d 1110, 1113-14 (7th Cir.2014); Jon C. Dubin, “Overcoming Gridlock: Campbell After a Quarter-Century and Bureaucratically Rational Gap-Filling in Mass Justice Adjudication in the Social Security Administration’s Disability Programs,” 62 Administrative Law Review 937, 964-71 (2010); Peter J. Lemoine, “Crisis of Confidence: The Inadequacies of Vocational Evidence Presented at Social Security Disability Hearings (Part II),” Social Security Forum, Sept. 2012, p. 1, www.lemoinelawfirm.com/wp-content/ uploads/2012/seminar_materials.pdf (visited November 25, 2015). Expert opinions must not be “conjured out of whole cloth.” Brault v. Social Security Administration, 683 F.3d 443, 449-50 (2d Cir.2012) (per curiam), citing Donahue v. Barnhart, 279 F.3d 441, 446 (7th Cir.2002).
One problem addressed in the cases and academic commentary that I’ve cited is that the only reliable statistics on number of jobs are census data of broad job categories, rather than data on the number of jobs in the narrower categories of jobs that the applicant for benefits could actually perform. Typically, it appears, the vocational expert simply divides the census estimate of the number of jobs in the broad category that includes the narrow category of jobs that the applicant can perform, by the total number of narrow categories in the broad category. The assumption is thus that every narrow category has the same number of jobs as every other narrow category within the broad category — a preposterous assumption.
Usually the administrative law judge, toward the end of his or her (in this case her) opinion denying benefits (the government as a matter of policy never appeals the grant of benefits), states that the limits to the applicant’s ability to work are not so severe as to render him or her incapable of full-time gainful employment (in which event, with the exception noted below, the applicant would be deemed totally disabled and entitled therefore to benefits). The administrative law judge then tells the vocational expert what the applicant can and cannot do and asks the expert to opine on the nature and number of jobs the applicant can perform that exist in the economy. If there is a nontrivial number of such jobs, the applicant is denied benefits. (Were the non-triviality condition not satisfied, it would be plain that the applicant was incapable of full-time gainful employment and so would be entitled to benefits.) The administrative law judge’s list of what the applicant in this case can and can’t do is: “can lift up to 20 pounds occasionally, lift and carry up to 10 pounds frequently, stand or walk for approximately 6 hours per 8 hour day, and sit for approximately 6 hours per 8 hour workday, with normal breaks ..., occasionally climb ramps and stairs, balance, stoop, kneel, and crawl, but never climb ladders, ropes, or scaffolds, crouch, push or pull with the left upper and left lower extremities, or reach in all directions (including overhead) with the left upper extremity.” The applicant is 56 years old, worked for more than 13 years at a steel factory where her duties includ *871 ed lifting and carrying steel sheets that weighed up to 100 pounds, and is acknowledged to be unable to do such work anymore because the manual labor that she performed for so many years took a toll on her body.
The administrative law judge found that the applicant has “severe impairments” consisting of “degenerative joint disease with total replacement of the left hip and osteoarthritis of the left shoulder.” (She has many subsidiary impairments as well, mainly on her left side like the severe impairments.) It seems ridiculous to think she can stand or walk for six hours in an eight-hour workday or “balance” (whatever that means), or do full-time work that even “occasionally” involves stooping, kneeling, crouching, crawling, or climbing ramps (depending on the angle — try climbing a ramp that is inclined by 45 degrees). Given the impairments of her left extremities (arm and leg) it is doubtful that she can pull, push, or reach with them; at least this issue central to her application required reasoned analysis, not an unexplained conclusion (though I acknowledge the severe time pressures under which the Social Security Administration’s administrative law judges labor). Nor was there any reason for the administrative law judge to say that the applicant can’t hold down a job that involves climbing ropes, as that is beyond obvious (and what kind of jobs in today’s economy involve climbing ropes?).
The limits of the applicant’s ability to use her “left extremities” bothered the vocational expert. He testified that the Dictionary of Occupational Titles does not describe jobs that can be performed with only one fully functioning limb, and he therefore had to rely on his “own experience” for his conclusion that the applicant can perform light and unskilled, or sedentary and unskilled work. But he failed to describe the experience that formed his opinion, despite our criticism in Herrmann v. Colvin, supra, 772 F.3d at 1113, of the vocational expert who failed to explain “how impressions from unspecified past experience and ‘knowledge’ could enable him to determine numbers of particular jobs” that persons with specified physical or mental impairments could perform. The question of how to incorporate a limb restriction into a description of work capability in the Dictionary of Occupational Titles has been a recurring issue, e.g., Carey v. Apfel, 230 F.3d 131, 145-47 (5th Cir.2000), and remains unresolved.
As examples of jobs that the applicant could perform despite the “left extremities” problem, the vocational expert instanced dealer account investigator, furniture rental consultant, and counter clerk, and opined that in the national economy there are 22,000 jobs of the first type, 40,000 of the second, and 50,000 of the third. But having said that, he quickly hedged his statement that such jobs are within the capacity of a person unable to crouch or to push, reach, or pull with her left extremities, by acknowledging that “the difference between the dominant hand and non-dominant hand is not actually specified in the DOT.” He said he was basing his testimony instead on his “experience on how those jobs are actually performed,” though, as we said, he never explained what that experience was.
And finally he said that someone with the applicant’s limitations who in addition couldn’t stand or walk for more than two hours in an 8-hour workday or lift more than 10 pounds occasionally could still perform sedentary jobs like a call-out operator (45,000 jobs in the national economy), a semiconductor bonder (30,000), and a registration clerk (27,000).
His testimony collapses when one considers the nature of the listed jobs. He had said on the basis of the administrative *872 law judge’s description of the applicant’s limitations that the applicant could do only unskilled “light” or “sedentary” work. Here are how the six jobs he said the applicant can perform are described in the Dictionary of Occupational Titles. A dealer account investigator “visits dealers to verify purchases financed by [a] bank against physical inventory of merchandise.” That doesn’t sound like unskilled work. Nor does “furniture rental consultant.” For his definition of “counter clerk” the vocational expert cited the paragraph in the Dictionary of Occupational Titles that defines processing film: the counter clerk “receives film for processing, loads film into equipment that automatically processes film for subsequent photo printing, and collects payment from customers of photofinishing establishment.” (That might actually be a job that the applicant in this case could do — the only one in the list.) A call-out operator “compiles credit information, such as status of credit accounts, personal references, and bank accounts to fulfill subscribers’ requests, using telephone.” Sedentary yes, unskilled no. A semiconductor bonder tends an “automatic bonding machine that bonds gold or aluminum wire to integrated circuit dies to connect circuitry to package leads.” Again, sedentary but not unskilled — and it could be dangerous for someone with a nonfunctioning left arm. Last is registration clerk, and here the vocational expert seems to have lit on the wrong paragraph of the Dictionary of Occupational Titles. The paragraph he cites refers to an election clerk — someone who performs administrative tasks “during elections.” Obviously that is occasional rather than full-time employment, because elections are not held continuously.
In short, the vocational expert’s testimony was worthless — and this apart from the apparent arbitrariness of his numerology. It is time the Social Security Disability Office cleaned up its act.